**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**KEVIN MATTHEWS** **PLAINTIFF**

**v.** **CIVIL ACTION NO.: 4:24-CV-49-SA-JMV**

**LEFLORE COUNTY, MISSISSIPPI, et. al.** **DEFENDANTS**

**ORDER DENYING MOTION TO QUASH AND GRANTING MOTION TO MODIFY SUBPOENA**

This matter is before the Court on Plaintiff's motion to quash a subpoena served upon the City of Greenwood, Mississippi (hereinafter referred to as "City") [Doc. 90]. The motion is now fully briefed, and the Court is prepared to rule. For the reasons detailed more fully below, the Court finds that the motion to quash should be denied, but that the motion to modify shall be granted inasmuch as the City is to be advised that production of the personnel file must be made to the Court within seven days, or by October 29, 2026. The Court will provide a copy to Plaintiff's counsel. Plaintiff's counsel shall have three business days to redact therefrom any sensitive identifiers, such as bank account numbers, social security numbers, and the like. The Court will conduct an in-camera review of the records and Plaintiff's proposed redactions and determine which of the records are to be provided to defense counsel.

**Background**

The complaint in this matter was filed on May 15, 2024 [Doc. 1]. In it, Plaintiff alleges he was terminated from employment with Leflore County, Mississippi, for engaging in protected political speech in violation of 42 U.S.C.§ 1983. Leflore County, on the contrary, contends Plaintiff was terminated for offensive behavior at work occurring on or about August 30, 2023, and being unrelated to any political speech. Plaintiff seeks, by way of damages, wage and benefit losses, front pay or reinstatement, emotional distress and humiliation, punitive damages, and attorney fees.

A six-month discovery period commenced on August 17, 2026 [Doc. 78], and on August 21, 2026,

Defendants propounded interrogatories and requests for production to Plaintiff. [Doc. 83]. The objections and responses thereto were due September 21, 2026, but were not timely made.[1] On September 24, 2026, Defendant gave notice of intent to serve a subpoena pursuant to Federal Rule of Civil Procedure 45 on the City, seeking for production on October 23, 2026:

> ANY AND ALL EMPLOYMENT RECORDS OF KEVIN MATTHEWS. THE COMPLETE EMPLOYMENT. THIS SHOULD INCLUDE APPLICATION, JOB DUTIES, DISCIPLINARY FORMS, PAYROLL, CERTIFICATIONS, REASON FOR LEAVING, ETC

[Doc 86-1].

On October 6, 2026, the Plaintiff responded to the then overdue discovery. Of some relevance to the instant dispute, the interrogatories included those that follow, as well as the corresponding request for production related to each and Plaintiff's responses, including objections:

**INTERROGATORY NO. 10:**

Please state the total amount of damages You seek in this action, itemized by category.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff objects to this Interrogatory to the extent it prematurely seeks a final damages computation before discovery concerning payroll, benefits, mitigation, interim earnings, retirement, insurance, and expert issues is complete. Plaintiff further objects to the extent it seeks legal conclusions or damages calculations not yet required by the scheduling order. Subject to and without waiving these objections, Plaintiff seeks all compensatory and equitable relief available under federal and state law, including past lost wages, lost employment benefits, lost accrued leave, reinstatement or front pay in lieu of reinstatement, emotional-distress damages, punitive damages, attorney's fees, litigation expenses, costs, prejudgment interest, post-judgment interest, and all other relief authorized by law.

Based upon information presently available, Plaintiff estimates his economic damages as follows:

1 "[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived." *Lopez v. Don Herring Ltd.,* 327 F.R.D. 567, 582 (N.D. Tex. 2018), citing *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989). Further, the Court notes that throughout the Defendants' response to the motion to quash [Doc. 92], they complain of the Plaintiff's failure to otherwise adequately respond to the County's discovery requests. Those complaints, to the extent not resolved mutually by the parties, must be timely brought before the Court on a proper motion to compel. The failure to timely do so will waive the right to subsequently complain. *See* L.U. Civ. R. 7(b)(2)(C), which states: "A party must file a discovery motion sufficiently in advance of the discovery deadline to allow response to the motion, ruling by the court, and time to effectuate the court's order before the discovery deadline."

**Past wage loss following termination from Leflore County:** Plaintiff lost approximately ten days of earnings between his August 31, 2023 termination from Leflore County and the commencement of his employment with the City of Greenwood on September 11, 2023. Plaintiff presently estimates this loss at approximately $931.51.

Loss associated with City of Greenwood compensation reduction: Plaintiff obtained replacement employment with the City of Greenwood at an initial annual salary of approximately $34,008.00. Although City records reflect approval of an increase to approximately $40,000.80 annually, Plaintiff did not receive that increase. According to the City wage sheet in the production, the reduction to $10.50 per hour took effect July 17, 2025. At 40 hours per week, that rate is equivalent to approximately $21,840 annually. Plaintiff's wage-loss computation will use amounts actually paid, the July 17 effective date, and applicable interim earnings or offsets, including verified income from freelance lawncare and the laundromat. Plaintiff will supplement this response with the recalculated amount and supporting computation after completing reasonable inquiry.

Past wage loss following termination of City employment: Plaintiff's City of Greenwood employment ended effective September 15, 2025. Plaintiff claims resulting past wage loss, subject to proof of causation and mitigation, including applicable interim earnings. Plaintiff will supplement this response with an itemized computation identifying the period, rate, offsets, and resulting amount after completing reasonable inquiry.

**Unpaid accrued leave:** At the time of termination, Plaintiff's payroll records reflected approximately 310.00 hours of accrued vacation leave and 204.50 hours of accrued sick leave. Plaintiff contends that Leflore County refused to compensate him for this accrued leave following termination. Based upon Plaintiff's compensation rate, the present estimated value of the unpaid accrued leave is approximately $8,412.08, subject to amendment upon receipt of complete payroll and benefits records.

Plaintiff's aggregate accrued economic damages consist of the verified amounts for initial lost wages, the City pay differential, post-City wage loss, and any recoverable unpaid leave or benefits. Plaintiff will supplement this response with a verified total after completing the itemized computations and applying appropriate mitigation offsets. This amount is exclusive of retirement losses, insurance benefits, front pay, emotional-distress damages, punitive damages, attorney's fees, litigation expenses, costs, prejudgment interest, and post-judgment interest.

Plaintiff also seeks compensatory damages for emotional distress, mental anguish, humiliation, anxiety, embarrassment, loss of financial security, disruption of his personal and professional life, and loss of enjoyment of life in an amount to be determined by the jury. Plaintiff seeks punitive damages against the individual Defendants in an amount to be determined by the jury, together with reasonable attorney's fees, litigation expenses, and costs as authorized by law.

This computation is based upon information presently available and will be supplemented as additional payroll, benefits, mitigation, retirement, insurance, and damages information becomes available. Plaintiff expressly reserves the right to amend or supplement this computation after additional discovery, expert analysis, or updated wage, benefit, retirement, mitigation, and damages information is obtained.

**INTERROGATORY NO. 13:**

State in detail how You calculated Your claimed lost wages or lost income, including Your salary or hourly wage with Leflore County, the dates and duration of unemployment, and Your current salary or hourly wage.

**RESPONSE TO INTERROGATORY NO. 13:**

Plaintiff objects to this Interrogatory to the extent it calls for expert damages calculations, legal conclusions, or a final lost-wage computation before discovery is complete. Subject to and without waiving these objections, Plaintiff's August 31, 2023 Leflore County earnings statement reflects a monthly salary of $2,833.33 and year-to-date gross earnings of $21,166.64. See Pla00142. He began City of Greenwood employment September 11, 2023, at approximately $34,008 annually. See Pla00189–Pla00190. The City approved an increase to approximately $40,000.80 annually, but Plaintiff was never paid at that approved rate. See Pla00189–Pla00190. According to the City wage sheet in the production, his compensation was reduced effective July 17, 2025, to $10.50 per hour, or approximately $21,840 annually assuming a 40-hour week. See Pla00189–Pla00190. City employment ended effective September 15, 2025. Plaintiff is not presently employed by another employer; he performs freelance lawncare maintenance and owns a laundromat from which he reports approximately $3,000 per month. Plaintiff is confirming whether that amount represents gross business receipts, net business income, or personal compensation and the period to which it applies. His claimed lost income is the supported County compensation and benefits he would have received less actual replacement wages and applicable interim earnings, as detailed in the supplemented damages computation. No wage at the approved but unpaid $40,000.80 City rate is treated as actually received.

**INTERROGATORY NO. 15:**

Describe in detail all efforts You have made to mitigate Your claimed lost wages or lost income since Your Termination.

**RESPONSE TO INTERROGATORY NO. 15:**

Plaintiff objects to this Interrogatory to the extent it seeks a complete narrative of every mitigation-related act without reasonable limitation and to the extent it seeks information equally available from produced employment records. Subject to and without waiving these objections, Plaintiff obtained City of Greenwood employment beginning September 11, 2023, shortly after his Leflore County termination. See Pla00189–Pla00190. The City's approved increase to approximately $40,000.80 annually was not paid, and his City pay was reduced to $10.50 per hour effective July 17, 2025, according to the produced wage sheet. His City employment ended September 15, 2025, after he declined reassignment. He also performs freelance lawncare work and owns a laundromat. Plaintiff is conducting reasonable inquiry into the dates and earnings from those activities and into any further applications, job-search efforts, offers, unemployment benefits, and earnings, and will supplement this response with the verified information.

**INTERROGATORY NO. 16:**

State the factual basis for Your claimed emotional distress, mental anguish, depression, or anxiety, if any, including the nature, extent, and duration of such injuries.

**RESPONSE TO INTERROGATORY NO. 16:**

Plaintiff objects to this Interrogatory to the extent it seeks private medical or mental-health information not reasonably related to the claims and defenses, seeks information beyond Plaintiff's claimed emotional-distress damages, or assumes the existence of a medical diagnosis or treatment where none is presently claimed. Subject to and without waiving these objections, Plaintiff claims ordinary emotional distress, mental anguish, humiliation, embarrassment, anxiety, stress, worry, loss of financial security, disruption to his personal and professional life, and loss of enjoyment of life resulting from his termination, loss of income, alleged retaliatory treatment, denial of the requested grievance hearing, and continuing financial consequences. Plaintiff has not been diagnosed by a physician or mental-health provider for these symptoms, has not sought treatment for emotional distress related to this lawsuit, and is not presently claiming medical-treatment expenses. Plaintiff expects to prove these damages primarily through his own testimony regarding the nature, extent, and duration of his emotional distress and the effect of the termination and resulting financial harm on his life. Plaintiff reserves the right to supplement this response if additional responsive information is later identified.

**REQUEST FOR PRODUCTION NO. 14:**

Please produce for inspection and copying each document, thing, or item of tangible evidence identified or relied upon by you in your response to the preceding Interrogatory No. 15.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Plaintiff objects to this Request to the extent it is overbroad, seeks documents unrelated to mitigation, or seeks materials equally available from employers, Defendants, or third parties. Subject to and without waiving these objections, Plaintiff has produced responsive employment, earnings, and mitigation materials at Pla00189–Pla00190.

**REQUEST FOR PRODUCTION NO. 15:**

Please produce for inspection and copying each document, thing, or item of tangible evidence identified or relied upon by you in your response to the preceding Interrogatory No. 16.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Plaintiff objects to this Request to the extent it assumes the existence of medical records, healthcare-provider records, or documentary support for ordinary emotional distress, and to the extent it seeks private medical or mental-health information beyond the claims and defenses. Subject to and without waiving these objections, Plaintiff incorporates his objections and response to Interrogatory

> No. 16. Plaintiff has not identified medical records, healthcare-provider records, or other documentary materials supporting emotional distress beyond Plaintiff's own testimony and related damages evidence. Plaintiff is not presently claiming medical-treatment expenses for emotional-distress treatment.
>
> **REQUEST FOR PRODUCTION NO. 16:**
>
> Please produce for inspection and copying each document, thing, or item of tangible evidence identified or relied upon by you in your response to the preceding Interrogatory No. 17.
>
> **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**
>
> Plaintiff objects to this Request only to the extent it seeks medical or mental-health information unrelated to the claims and defenses or records without a reasonable temporal limitation. Subject to and without waiving this objection, Plaintiff incorporates his response to Interrogatory No. 17. Plaintiff has not sought treatment from any healthcare provider for emotional distress related to this lawsuit and has not identified responsive emotional-distress treatment records for production. Consistent with the Case Management Order, Plaintiff has executed and attached HIPAA-compliant authorization, including the identifying information reasonably required for healthcare facilities to locate and release responsive records, provided that the authorization is limited to records from January 1, 2022, through the date of execution and contains an appropriate expiration date or event.

[Doc. 92-1].

Then, on October 8, 2026, Defendants served the above-described subpoena on the City [Doc. 89], and the following day, Plaintiff moved to quash it by virtue of the instant motion [Doc. 90]. By the motion and accompanying memorandum, the Plaintiff argues he has standing to move to quash, as he has a personal right or privilege. *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *Sterling v. Liberty Mutual Group, Inc.*, No. 3:25-cv-00097-HTW-LGI, ECF No. 60 (S.D. Miss. Sept. 26, 2025). And, according to Plaintiff, he has, by the forgoing discovery responses, already provided Defendants anything that is in his City employment file that might be relevant to a claim or defense in this case, including, in particular, any information relevant to his duty to mitigate his damages by his responses to the aforesaid discovery. And, according to Plaintiff, he should not have to disclose what he describes as his "unrelated disciplinary history" as an employee of City or anything else in his file that he has not voluntarily produced himself in response to Defendants' discovery. *Id.* at 4. As for his discipline as an employee of the City,

Plaintiff argues it is not relevant because it "has nothing to do with" why he was terminated by the County, and he contends he has produced everything in the file that is relevant to a claim or defense in this action. *Id.*

In their opposition to the motion to quash, the Defendants argue primarily that Plaintiff's written discovery responses demonstrate that certain relevant City employment records related to his duty to mitigate have been omitted from production by him. Namely, they note that it appears from Plaintiff's responses that he was employed by City for a greater wage than he received at Leflore County, thus narrowing his actual wage loss resulting from his termination by Leflore County to approximately $931.51, comprised of the ten days he was between employment from Leflore County to the City, and even though he was apparently awarded an even higher salary by the City ($16.25 at the time of hire, with an approved increase to $22.12 per hour as of June 19, 2025), he intends to argue that he subsequently received a salary reduction such that after July 17, 2025, his hourly City wage was only $10.50, whereas it had been more with Leflore County, and that Leflore County is responsible for that difference until September 15, 2025, the date of his termination from employment at the City, as well as thereafter. In short, Defendants suggest, and I agree, that it is obvious that Plaintiff's employment file should be produced to explain, for example, the reason for his wage loss after his initial employment with the City, and also why he ultimately lost all employment there. These are plainly relevant to his duty to mitigate. Moreover, the Defendants point out that it was Plaintiff, himself, who in his discovery responses indicated that such information should be sought from the City via subpoena. *See* [Doc. 92-1] at 9 (Plaintiff objected to Interrogatory No. 14 "to the extent it seeks information outside the relevant time period or information equally available through employment records produced or obtainable by subpoena.").

**Law and Analysis**

Rule 45 of the Federal Rules of Civil Procedure governs discovery obtainable from a non-party

through subpoena. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (1) fails to allow a reasonable time to comply; (2) requires a person to comply beyond the geographical limits specified in Rule 45(c); (3) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (4) subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3). Generally, modification of a subpoena is preferable to quashing it outright. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). "Both Rules 45 and 26 authorize the court to modify a subpoena duces tecum when its scope exceeds the boundaries of permissible discovery or otherwise violates the parameters of Rule 45." *Tusa v. Israel & Sylvia Goldberg Props., L.L.C.*, No. CV 23-1770, 2024 WL 4142833, at *3 (E.D. La. Aug. 20, 2024), citing *Hahn v. Hunt*, No. 15-2867, 2016 WL 1587405, at *2 (E.D. La. Apr. 20, 2016), *aff'd*, 2016 WL 6518863 (E.D. La. Nov. 2, 2016).

The person filing the motion to quash has the burden of proof to demonstrate that compliance would impose undue burden or expense. *Id., citing Wiwa,* 392 F.3d at 818. To determine whether the subpoena presents an undue burden, the Fifth Circuit considers the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. *Id.* "Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation." *Id.* "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.*

Under Rule 26(b)(1), "[u]nless otherwise limited by court order, ... [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value." *Lopez*, 327 F.R.D. at 573.

This Court recently analyzed a party's standing to challenge a non-party subpoena as follows:

> As for standing to challenge a subpoena issued to a non-party, the general rule is that a party to litigation lacks standing to object to it, with a few exceptions. *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979). A party, in contrast to the entity toward whom the third-party subpoena duces tecum is directed,[5] only has standing to object to production of documents containing privileged or other protected matter; it does not have standing to raise objections based upon undue burden or the alleged broadness of the document request. *See* Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 2459 (1995); *Will–Drill Resources, Inc. V. J.R. Pounds, Inc.*, 2007 WL 609791, *2 (S.D. Miss. 2007); *Keybank Nat'l Ass'n v. Perkins Rowe Associates, LLC*, 2011 WL 90108, at *2 (M.D. La. Jan. 11, 2011) ("A party has standing to challenge a subpoena issued to a non-party if the subpoena seeks confidential or protected information sensitive to the movant ... However, a party may not challenge a subpoena made to a third-party on the grounds that the information sought is not relevant or imposes an undue burden.").
>
> …
>
> A party generally "cannot challenge a Rule 45 subpoena directed to a third party on the basis that ... the subpoena is overly broad, or that the subpoena seeks information that is irrelevant because only the responding third party can object and seek to quash a Rule 45 subpoena on those grounds." *Id.* at 500 (quoting *Salmon v. Waffle House, Inc.*, No. CV 19-1349, 2020 WL 6708382, at *2 (E.D. La. Nov. 16, 2020)); *see also Schmidt Tr. of Est. of Border Anesthesia Servs., P.C. v. McKee*, No. CV B-10-20, 2012 WL 13137023, at *3 (S.D. Tex. Feb. 21, 2012) (same).

*Hicks v. State Farm Fire & Cas. Ins. Co.*, No. 4:23-CV-242-DMB-JMV, 2025 WL 781090, at *4 (N.D. Miss. Mar. 11, 2025).

Accordingly, any argument raised by Plaintiff regarding the subpoena constituting "sweeping discovery," being "overbroad," or that the "demand is . . . broader than necessary in light of the wage and separation information already produced" on the basis of Rule 45 is due to be denied. *See* [Doc. 91].

Nonetheless, even if a party lacks standing under Rule 45, they may seek relief under Rule 26(c). Under Rule 26, a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Good cause" exists when disclosure will result in a clearly defined and serious injury to the party seeking the protective order. *Tusa*, 2024 WL 4142833, at *3 (E.D. La. Aug. 20, 2024). In determining good cause, the court must balance the risk of injury without the protective order and the requesting party's need for information. *Id.,* citing *Blanchard & Co., Inc. v. Barrick Gold Corp.*, No. 02-3721, 2004 WL 737485, at *5 (E.D. La. Apr. 5, 2004). The party seeking the protective order bears the burden of showing that a protective order is necessary, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Id.*, citing *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017).

Having considered the relevant factors set forth by the Fifth Circuit in *Wiwa*, along with the arguments of the parties, and the relevant discovery requests and responses provided herein, the Court finds that the subpoena should not be quashed. The information sought is potentially relevant to the mitigation issue and on the issue of the cause of any alleged emotional damages; the County has demonstrated a potential need for the documents; the only information sought by the subpoena is Plaintiff's employment file, which constitutes a particular set of documents that are limited in time; and the burden imposed upon the City to produce the employment file is minimal.

However, the Court notes that Plaintiff has also raised concerns that a "complete-file demand creates a concrete risk that personal identifiers, private employment information, and materials unrelated to any disputed damages issue will be disclosed. Once produced, that privacy injury cannot be fully undone." [Doc. 90] at 3. The Court finds that these concerns may be adequately addressed by production of the personnel file to the undersigned. The Court will undertake to thereafter provide a duplicate copy to

Plaintiff's counsel. Counsel shall have three business days to review and redact therefrom what it contends are any irrelevant personal and sensitive identifiers/information and return the redacted documents to the undersigned. The Court will then make a determination of what shall be produced to the Defendants.

**Conclusion**

For the reasons provided herein, the Court finds that the motion to quash should be DENIED, but that the motion to modify shall be GRANTED inasmuch as counsel for Defendants is to notify the City that production of the personnel file should be made to the Court via email to judge_virden@msnd.uscourts.gov no later than seven (7) days from today's date, or by October 29, 2026. The Court will then provide a copy to Plaintiff's counsel. Plaintiff's counsel shall have three (3) business days to redact therefrom any sensitive identifiers, such as bank account numbers, social security numbers, and the like personal identifiers/information and return the redacted copies to the Court for review. The Court will conduct an in-camera review of the records and Plaintiff's proposed redactions and then determine which of the records are to be provided to defense counsel.

**SO ORDERED**, this the 22nd day of October, 2026.

*/s/ Jane M. Virden*
JANE M. VIRDEN
UNITED STATES MAGISTRATE JUDGE